UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAKSIM VLADIMIROVI
TIMOSHCHUK,

       Petitioner,

    v.                             Case No.:  2:26-cv-00434-SPC-NPM

GARRETT RIPA,

       Respondent,

                                     /

## OPINION AND ORDER

Before the Court are petitioner Maksim Vladimirovi Timoshchuk's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 3), and Timoshchuk's reply (Doc. 4).  For the below reasons, the Court grants the petition.

### A. Background

Timoshchuk is a native of Ukraine.  He entered the United States as a 9-year-old refugee on July 16, 2002, and was later adjusted to lawful-permanent-resident status.  Timoshchuk was convicted of a drug crime on August 24, 2015, and an immigration judge ordered him removed on October 25, 2016.  Ukraine declined to accept Timoshchuk for repatriation.  After 113 days in immigration detention, Immigration and Customs Enforcement ("ICE") released Timoshchuk under an order of supervision because there was no significant likelihood of removal in the reasonably foreseeable future.

On November 7, 2025, police arrested Timoshchuk for driving without a valid license and turned him over to ICE.  ICE issued a Notice of Revocation of Release on November 9, 2025, and Timoshchuk remains in ICE detention. Timoshchuk challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Immigration and Nationality Act ("INA").

**B. Jurisdiction**

Before addressing the merits of Timoshchuk's claim, the Court must address its jurisdiction.  The respondent argues a provision of the INA strips the Court of jurisdiction over this action.  It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said

to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

Timoshchuk does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Rather, Timoshchuk challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Timoshchuk's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

## C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.* The presumptively reasonable six-month period for detention pending removal commences at the beginning of the removal period. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondent argues Timoshchuk's petition is premature because his current detention has not exceeded 180 days. They argue the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively

allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days.  As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period."  *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies.  Timoshchuk has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  ICE itself made that determination when it released Timoshchuk under an order of supervision.  Ukraine declined to accept Timoshchuk for repatriation in 2015, and there is no evidence it will accept him now.  ICE has not obtained travel documents from Ukraine, made any travel arrangement, or otherwise suggested it is attempting to execute the removal order.  The burden thus shifts to the respondents, but they make no attempt at rebuttal.  In fact, the U.S. Attorney's Office states it has not received any information suggesting removal is imminent.

**D. Conclusion**

The Court finds no significant likelihood Timoshchuk will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*. If removal becomes likely in the reasonably foreseeable future, DHS can detain Timoshchuk to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680.

Accordingly, it is hereby **ORDERED:**

Maksim Vladimirovi Timoshchuk's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Timoshchuk within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his wife and next friend Amanda Gugliemini when and where he can be collected. She has provided the following phone number: (916) 661-8235.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on March 10, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record